## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 25 2019, 10:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Valerie K. Boots
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Dennis Gibson,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

July 25, 2019

Court of Appeals Case No.
19A-CR-436

Appeal from the Marion Superior
Court

The Honorable Clayton Graham,
Judge

The Honorable Steven J. Rubick,
Magistrate

Trial Court Cause No.
49G07-1810-CM-33904

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Dennis Gibson (Gibson), appeals his conviction for disorderly conduct, a Class B misdemeanor, I.C. § 35-45-1-3(a)(1).

We affirm.

# ISSUE

Gibson presents this court with one issue on appeal, which we restate as: Whether the State presented sufficient evidence beyond a reasonable doubt to sustain his conviction for disorderly conduct.

# FACTS AND PROCEDURAL HISTORY

On the evening of September 9, 2018, Gibson was waiting to enter Club Blu nightclub in downtown Indianapolis, Indiana. Indianapolis Police Officer Sergio De Leon (Officer De Leon) was off duty that night but was working security at the nightclub. He was sitting in his patrol car, parked outside the nightclub's entrance, while watching "a pretty large crowd of people in front of the bar, with many people going in and out." (Transcript pp. 6, 9).

Officer De Leon noticed two men, later identified as Douglas Currie (Currie) and Gibson, near the rear wheel well of his patrol car. While the officer was observing them, he saw Gibson throw a "punch" at Currie. (Tr. p. 10). He "observed Gibson wind back and . . . strike Currie in the face with his right hand." (Tr. p. 6). Watching the entire time, Officer De Leon did not see Currie attempt to hit Gibson before or after Gibson punched Currie. Exiting his patrol

car, Officer De Leon positioned himself in between Currie and Gibson and ordered Gibson to stop. However, Gibson "continued to walk towards Currie with his fist closed as if he was going to keep hitting" Currie. (Tr. p. 7). As Gibson was "charging" at Currie, Officer De Leon "tried to grab him, and . . . ended up falling to the ground." (Tr. p. 7). Officer De Leon handcuffed Gibson.

[6] On October 3, 2018, the State filed an Information, charging Gibson with Count I, battery, as a Class B misdemeanor, and Count II, disorderly conduct, as a Class B misdemeanor. On January 24, 2019, the trial court conducted a bench trial and, at the conclusion of the evidence, found Gibson not guilty of battery, but guilty of disorderly conduct. In its ruling from the bench, the trial court found as follows:

> It's not in dispute that [Gibson] touched Currie because [Gibson] admitted touching [Currie]. [] [Currie] did not care enough to show up today to testify. I can't fully consider the evidence regarding battery. [] There are a lot of explanations for why people hit each other. And again, [Currie] is not here. Based on that I find the State has failed to carry its burden as to Count I. But the officer did testify, very clearly and plainly, that he gave orders to [Gibson] which were not followed, and he engaged in a tumultuous course of conduct as he failed to comply with the officer's orders. The State has met its burden as to Count II.

(Tr. p. 21). That same day, Gibson was sentenced to four days in the Marion County Jail.

[7] Gibson now appeals. Additional facts will be provided if necessary.

# DISCUSSION AND DECISION

[8] Gibson contends that the State did not present sufficient evidence beyond a reasonable doubt to sustain his conviction. When reviewing the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the judgment. *Jackson v. State*, 50 N.E.3d 767, 770 (Ind. 2016). We neither assess witness credibility nor weigh the evidence, and we will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proved beyond a reasonable doubt. *Id*.

[9] To convict Gibson for disorderly conduct as a Class B misdemeanor, the State was required to establish that Gibson "recklessly, knowingly, or intentionally: (1) engage[d] in fighting or in tumultuous conduct." *See* I.C. § 35-45-1-3(a)(1). In *Day v. State*, 57 N.E.3d 809, 813 (Ind. 2016), our supreme court interpreted "fighting" narrowly, as to "cover[] only physical altercations." "Tumultuous conduct," on the other hand, is defined as "conduct that results in, or is likely to result in, serious bodily injury to a person or substantial damage to property." I.C. § 35-45-1-1. "The term 'likely,' as used to define tumultuous conduct, includes a temporal element of immediacy." *Davis v. State*, 672 N.E.2d 1365, 1367 (Ind. Ct. App. 1996). The trial court found Gibson guilty under the tumultuous conduct prong of the charge.

[10] On appeal, Gibson's argument focuses on the fact that Currie did not incur serious bodily injury, and he denies that any inference existed that serious bodily injury was likely to result. Relying on case law interpreting serious

bodily injury for a battery conviction, Gibson asserts that the State did not establish that Currie had suffered "extreme pain" when Gibson struck him. (Appellant's Br. p. 13). We find Gibson's argument to be meritless.

[11] Interpreting the serious bodily injury element of the charge, our supreme court has noted that tumultuous conduct can be established "when the aggressor appears well on his way to inflicting serious bodily injury but relents in the face of superior force or creative resistance." *Bailey v. State*, 907 N.E.2d 1003, 1007 (Ind. 2009). In *Bailey*, after throwing down his drink and his coat, Bailey stepped towards the victim in an angry manner, with clinched up fists at his sides and let out a series of obscenities all within inches of the victim's face. *Id.* at 1007. Bailey only backed away from the victim upon noticing an officer present. *Id.* Our supreme court noted that it "was reasonable for the trier of fact to conclude that, but for the officer's arrival, Bailey's conduct would have escalated" as there was sufficient evidence to conclude that serious bodily injury was likely to result. *Id.*

[12] Likewise here, Officer De Leon testified that Gibson had thrown the first punch at Currie before he could interfere. He "observed Gibson wind back and . . . strike Currie in the face with his right hand." (Tr. p. 6). Gibson refused to follow Officer De Leon's order to stop and instead "continued to walk towards Currie with his fist closed as if he was going to keep hitting" Currie. (Tr. p. 7). Gibson charged at Currie, while Officer De Leon "tried to grab him, and . . . ended up falling to the ground." (Tr. p. 7). Accordingly, but for Officer De Leon's interference, Gibson would have continued his escalating conduct and

the trier of fact could reasonably conclude that serious bodily injury was likely to result and thus that Gibson had engaged in tumultuous conduct.

[13] Nevertheless, focusing on the trial court's concluding remarks, Gibson asserts that the trial court's statement that "[t]here are a lot of explanations for why people hit each other" must necessarily preclude a guilty verdict. (Appellant's Br. p. 15). In support of his argument, Gibson refers this court to *Kribs v. State*, 917 N.E.2d 1249 (Ind. Ct. App. 2009), where Kribs was charged with knowingly or intentionally entering an area of an airport to which access is controlled by the inspection of persons and property while he carried a handgun. *See* I.C. § 35-47-6-1.3. In its findings, the trial court stated that it believed that Kribs "didn't remember" that he had the handgun in his possession when he entered the airport and that there was no "malicious intent" involved. *Id*. at 1251. We reversed Kribs's conviction, noting that "[t]he trial court observed the witnesses, weighed the evidence, and concluded that Kribs was unaware that he had the handgun in his possession when he entered the airport and placed it on the x-ray conveyor belt." *Id*. We cautioned that "[h]ad the trial court remained silent, we would likely have affirmed Kribs's conviction. In such a situation, we could have inferred that the trial court did not believe Kribs's version of events or that it gave more weight to the evidence highlighted by the State that Kribs always carried the handgun in his jacket pocket." *Id*. Relying on the *Kribs* court's rationale, Gibson maintains that "[t]he court's words reveal its conclusion that the State not only failed to prove

Gibson committed battery, but also failed to prove Gibson engaged in disorderly conduct by fighting." (Appellant's Br. pp. 15-16).

[14] We cannot say that the trial court's statement contradicts or otherwise affects Gibson's conviction. While the trial court's statement that "there are a lot of explanations for why people hit each other" reflects upon the underlying motives of the actors, this general assertion does not indicate that all or parts of the disorderly conduct charge have not been met. Rather, immediately prior to the statement, the trial court considered Gibson's admission that he had hit Currie. Accordingly, in light of the complete statement, the trial court's statement did not negate Gibson's guilty judgment.

## CONCLUSION

[15] Based on the foregoing, we hold that the State presented sufficient evidence beyond a reasonable doubt to sustain Gibson's conviction for disorderly conduct.

[16] Affirmed.

[17] Vaidik, C. J. and Bradford, J. concur